# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBIN FEEKO, NELIDA MARENGO, JANET RODGERS**, on behalf of themselves, individually, and on behalf of all others similarly situated, | Civil Action NO. 11-4296 |
| v. | |
| **PFIZER, INC. and WYETH SPECIAL TRANSACTION SEVERANCE PLAN** | |

NORMA L. SHAPIRO, J.                                                FEBRUARY 27, 2013

## MEMORANDUM

Three former employees of Wyeth, Robin Feeko, Nelida Marengo, and Janet Rodgers (collectively "named plaintiffs"), bring this action on behalf of themselves and all other similarly situated persons (collectively "class" or "putative plaintiffs") against defendants Pfizer, Inc. ("Pfizer"), and the Wyeth Special Transaction Severance Plan ("Severance Plan" or "Plan"). The plaintiffs seek to recover severance benefits for themselves and members of the class, with interest, under the Employee Retirement Income Security Act ("ERISA"), § 502(a)(1)(B), as amended, 29 U.S.C. § 1132(a)(1)(B). Currently pending before the court is named plaintiffs' Motion for Class Certification and Appointment of Class Counsel.

Plaintiffs' propose a class consisting of:

Participants in the Severance Plan, who, as employees of the Company (Wyeth, and subsequently Pfizer), provided services to the Benchmark Federal Credit Union, experienced an Involuntary Termination of Employment by the Company on March 31, 2010, and following their Involuntary Termination of Employment, were hired by Benchmark Federal Credit Union and not provided with Change in Control Severance Benefits under the Severance Plan.

The named plaintiffs ask the court to certify this action as a class action under Federal Rule of Civil Procedure 23(b)(1) and (b)(2), or, alternatively, under (b)(3) and appoint class counsel under Fed. R. Civ. P. 23(g).

After considering the named plaintiffs' complaint (paper no. 1), defendants' answer (paper no. 4), plaintiffs' Motion for Class Certification and Appointment of Class Counsel (paper no. 9), defendants' opposition (paper no. 20), plaintiffs' response (paper no. 23), supplementary filings, and oral argument, the court concludes that certification of the putative class of approximately forty-two individuals who worked for Wyeth, and subsequently Pfizer, until March 31, 2012 and who, when they began working for Benchmark Federal Credit Union on April 1, 2010, were not provided with "Change in Control" severance benefits under the Severance Plan, would be improper.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2008, the three named plaintiffs worked for Wyeth. Compl. ¶ 2. On January 14, 2009, Wyeth adopted the Severance Plan, designed to provide Wyeth employees with severance benefits if an employee's employment was terminated within twenty-four months of any change in control of the company.[1] Compl. ¶ 2.

On October 15, 2009, Pfizer, a publicly traded biopharmaceutical company, acquired Wyeth in a $68 billion cash and stock transaction, and the named plaintiffs became Pfizer employees. Compl. ¶ 3, 13. Pfizer's acquisition of Wyeth constituted a change in control under

---

[1] Plaintiffs allege they were participants in the Severance Plan as the term "participant" is defined in ERISA § 3(7), as amended, 29 U.S.C. § 1002(7). Compl. ¶ 9-11.

2

the Plan. Def. Opp. Mot. Class Cert. 1. As a result of the acquisition, Pfizer became the sponsor of the Severance Plan, with benefits to be paid by Pfizer. Compl. ¶ 13.

Under the Severance Plan, if an eligible participant experienced a termination of employment with the company during the twenty-four month period following the change in control, for any reason other than retirement or good cause ("Involuntary Termination of Employment"), the employee was entitled to receive change in control severance benefits.[2] Benefits became available provided that a participant's employment was not transferred to a "successor company of the Company or (any of its affiliates) . . . ." Compl. ¶ 28, 33, 65; Sev. Plan § 1.19. The terms "successor employer" and "successor company," are not defined in the Plan. Answer ¶ 75.

According to the claims procedure, an employee who believes she is entitled to receive benefits under the Plan must submit a claim to the Plan Administrator within sixty days of the employee's termination. Sev. Plan § 7.5(a). As outlined in the procedure, if an employee's claim is denied, the claimant would receive written notice of the denial within ninety days; she might appeal within sixty days thereafter. *Id.* at § 7.5(b). A final and binding decision regarding the appeal would have to be furnished within sixty days. *Id.* at § 7.5(c).

---

[2] Severance benefits include salary continuation benefits, certain welfare benefits, and the Rule of 70 benefits, as applicable. Compl. ¶ 69. Under the plan, salary continuation benefits are calculated by continuing the severed participant's salary for the longest period calculated by the following formula: 1) the sum of two-weeks for each year of eligible service plus one-week for each $10,000 in salary the participant earned at the time of termination (not to exceed 12 additional weeks); or 2) 26 weeks of salary (for employees who earn a salary less than $200,000); or 3) 52 weeks of salary (for employees who earn a salary of more than or equal to $200,000). The number of weeks used to calculate the amount of salary continuation benefits for the applicable employee constitutes such employee's applicable "Benefit Continuation Period." Compl. ¶ 29; Def.'s Opp. Mot. Class Cert., Ex. A, Wyeth Special Transaction Severance Plan ("Sev. Plan") § 4.2(a). The Rule 70 benefit is an early retirement subsidy, available to those employees who met eligibility requirements and who had combined age and years of vesting service equal to or in excess of 70. Compl. ¶ 29; Sev. Plan § 5.3(b).

Section 7.5(a - d) of the Severance Plan, concerning claims procedures, states:

> (a) The Company will notify an Employee at the time of Termination of Employment what benefits, if any, the Employee will receive under the Plan. If an Employee believes that he or she is entitled to receive additional benefits under the Plan, a claim must be submitted for benefits in writing to the Plan Administrator. Any claim for benefits must be received by the Plan Administrator within 60 days after the date of the Employee' Terminated Employment. If a claim for benefits under the Plan is denied in whole or in part, the claimant will receive written notice of the denial within 90 days after the filing of the claim. The notice will state the specific reason for the denial of benefits.
>
> (b) Any claimant whose claim for benefits is denied may request a review of the decision denying such claim. The claimant or such claimant's duly authorized representative must submit a written request for review to the Plan Administrator within 60 days after receiving the notice of denial. When making a request for review, a claimant should state the reasons why such claimant believes the claim was improperly denied and should submit any documents or information relevant to the claim.
>
> (c) The decision on review will be completed and furnished to the claimant in writing within 60 days after receipt of the request for review. All decisions of the Plan Administrator are final and binding. In unusual circumstances the Plan Administrator may require an extension of time for deciding on a claim for benefits or a request for review. Whenever there is a need for an extension of time, the Plan Administrator will notify the claimant of the extension. In no event will such an extension exceed a period of 90 days in the case of the initial claim or 60 days in the case of the decision on review.
>
> (d) If the Plan Administrator fails to take any action required by it within the time limits specified above, the claim shall be deemed denied as of the latest date by which such action should have been completed.

After Pfizer's acquisition of Wyeth, an employee involuntarily terminated from her employment prior to October 15, 2011 (the date marking the end of the twenty-four month period following Pfizer's acquisition) would be entitled to submit a claim for severance benefits under the Plan. Def.'s Opp. Mot. Class Cert. 2.

Following Pfizer's acquisition, plaintiffs were on the Pfizer payroll and participating in Pfizer's benefit programs; they worked at the federally chartered Benchmark Federal Credit

4

Union ("Benchmark"), a separate legal entity from Pfizer. Compl. ¶ 3. On or about March 10, 2010, Pfizer employees at Benchmark branches, including the plaintiffs, participated in a teleconference call with Pfizer Human Resources representatives; the employees were informed that, as of April 1, 2010, they would no longer be employed by Pfizer but would be employed by Benchmark. These employees were also informed they were not eligible for severance benefits under the Plan because they would be transferred, not terminated. Compl. ¶ 36-37. Employees were told this was according to an Employment Continuity Agreement between Pfizer and Benchmark. This Agreement, effective April 1, 2010, was not an amendment to the Severance Plan; it guaranteed continued employment at a rate of pay at least equal to the rate of pay earned at the time of the transfer for a period extending from the date of transfer to October 15, 2011 and provided for severance benefits for any employee involuntarily terminated from her employment after the transfer but prior to October 15, 2011. Answer ¶ 86; Def.'s Opp. Mot. Class Cert. 2, Ex. C.

Plaintiffs allege that on March 17, 2010, Pfizer employees who worked at Benchmark received memoranda requesting personnel information in "preparation for the process of setting up all personnel records and payroll for Benchmark . . . ." Compl. ¶ 39. Pfizer employees were also required to complete an employment application and sign a form authorizing an investigation into all statements on the application "as may be necessary in arriving at an employment decision." Compl. ¶ 39.

On March 31, 2010, Pfizer employees who worked at Benchmark ceased working for Pfizer; on April 1, 2010, plaintiffs began employment with Benchmark. Compl. ¶ 3, 40. The employees appear to have remained in the same offices, but from that day forward, the employees were paid directly by Benchmark, benefits were provided by Benchmark, and all employment

5

personnel decisions were made by Benchmark. Compl. ¶ 40. Plaintiffs allege that this change in employment amounted to an involuntary termination; defendants allege the Benchmark employees had their employment transferred from Pfizer to Benchmark under the Employment Continuity Agreement. Def.'s Opp. Mot. Class Cert. 2.

In late May 2010, the three named plaintiffs filed claims with Wyeth's Benefits Administrator for benefits under Section 2.2 of the Severance Plan.[3] Compl. ¶ 4. Plaintiffs Robin Feeko and Janet Rodgers submitted benefit claims on May 26, 2010; plaintiff Nelinda Marengo submitted a benefit claim on May 24, 2010. Compl. ¶ 45, 51, 57. The women, claiming they were no longer employees of Pfizer or one of its affiliates, requested severance benefits for having been involuntarily terminated. Compl. ¶ 45, 51, 57. On August 27, 2010, the Plan's administrative committee, denying the plaintiffs' claims, stated that, "[T]heir employment was transferred to Benchmark, which is a 'successor employer' and a 'successor to Pfizer with respect to the outsourcing of its credit union work.'" Compl. ¶ 4. According to the committee, the women did not meet the eligibility criteria set forth in the Severance Plan for three reasons: 1) The plaintiffs had been transferred to a "successor employer;" 2) the plaintiffs had not experienced an employment loss; and 3) the plaintiffs had not experienced a reduction in the base rate of pay nor had their principal place of business changed. Compl. ¶ 46, 52, 58.

In October 2010, the three named plaintiffs appealed the denials of their benefit claims to the administrative committee. Plaintiffs Robin Feeko and Nelida Marengo submitted their written appeals on October 26, 2010; plaintiff Janet Rodgers submitted her written appeal on October 25, 2010. Compl. ¶ 47, 53, 59. All three women argued that they had not been transferred from

---

[3] Section 2.2 provides that the plan administrator, which for relevant periods was the Pfizer administrative committee, had full discretion to determine eligibility to receive benefits under the Plan. Compl. ¶ 34.

Pfizer to Benchmark because: (1) they were required to complete an employment application; (2) Benchmark was not an affiliate or successor company of Pfizer; (3) the letter denying their claims was based on a misreading of the Severance Plan; and (4) employment with Benchmark did not disqualify them for severance benefits. Compl. ¶ 47, 53, 59.

On December 16, 2010, the administrative committee denied the named plaintiffs' appeals in writing for the reasons previously stated; in addition, the committee noted that, "[T]his interpretation of the Plan is consistent with Wyeth's past practices...where Wyeth denied severance to employees transferred to another entity as a result of a sale if, like here, the entity to which employees were transferred provided services back to Wyeth." Compl. ¶ 48, 54, 60. The named plaintiffs were informed that the administrative committee's decisions were final and that they had the right to challenge the adverse determinations by bringing civil actions under ERISA, § 502(a). *Id.*

Other than the three named plaintiffs, no other member of the putative class filed a claim for severance benefits within the sixty-days following March 31, 2010 or a late claim for severance benefits after the sixty-day window closed. Def.'s Opp. Mot. Class Cert. 3, Ex. D.

ERISA § 502(a)(1)(B), as amended, 29 U.S.C. § 1132(a)(1)(B), provides that a participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the term of the plan." On July 1, 2011, Feeko, Rodgers and Marengo brought this ERISA action on behalf of themselves and all others similarly situated against Pfizer and the Severance Plan seeking benefits due under the terms of the Severance Plan. The plaintiffs, alleging Benchmark is not a successor company either to Wyeth or Pfizer, contend the administrative committee abused its discretion in denying their claims for severance benefits by failing to determine eligibility in accordance with

7

the provisions of the Severance Plan and failing to construe the terms of the plan in good faith. Compl. ¶¶ 5, 44. The issue is whether the plaintiffs' April 1, 2010 employment at Benchmark was the result of a termination under the terms of the Severance Plan so that plaintiffs are entitled to receive severance benefits.

## DISCUSSION

The court considers whether to certify the proposed class under Rule 23 of the Federal Rules of Civil Procedure.

### I. Rule 23(a) Prerequisites to a Class Action

Federal Rule of Civil Procedure 23(a) mandates a showing of numerosity, commonality, typicality, and adequacy of representation before a class may be certified. Fed. R. Civ. P. 23(a). The Third Circuit has noted that there is a conceptual distinction between the first two prerequisites, numerosity and commonality (evaluating the sufficiency of the class itself), and the last two prerequisites, typicality and adequacy of representation (evaluating the sufficiency of the named class representatives). *Hassine v. Jeffes*, 846 F.2d 169, 176 n.4 (3d Cir. 1998).

Plaintiffs bear the burden of establishing each element of Rule 23 by a preponderance of the evidence. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008); *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule–that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.").

Courts may only certify after rigorous analysis. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). "The analysis requires 'a thorough examination of the factual and

legal allegations' and 'may include a preliminary inquiry into the merits.'" *Behrend v. Comcast Corp.*, 655 F.3d 182, 190 (3d Cir. 2011), *citing Hydrogen Peroxide*, 552 F.3d at 317. A merits inquiry, for example into a statute-of limitations defense, is permitted at the class certification stage when necessary to determine a Rule 23 requirement. *In re Comm. Bank Northern Va. v. PNC Bank, et al.* 622 F.3d 275, 294 (3d Cir. 2010)("the merits of a statute-of-limitations defense to the named plaintiffs' claims may be relevant to evaluating their adequacy as class representatives in the same way any type of defense may be relevant to that inquiry. . .").

## II. Numerosity

Rule 23(a)(1) requires a potential class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A court must evaluate the practicality of joinder in the particular litigation. *Gurmankin v. Costanzo*, 626 F.2d 1132, 1135 (3d Cir. 1980). The facts that a court might consider when assessing the practicability of joinder include: "(1) the size of the putative class; (2) the geographic location of the members of the class; and (3) the relative ease or difficulty in identifying members of the class for joinder purposes." *Ardrey v. Fed. Kemper Ins. Co.*, 142 F.R.D. 105, 110 (E.D.Pa. 1992). Judicial economy and the avoidance of a multiplicity of actions are also particularly relevant. *Id.* The court is guided by common sense. *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 462 (E.D. Pa. 2000).

A class of more than 40 people generally satisfies the numerosity prerequisite. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Plaintiffs allege the proposed class consists of "42 employees who were terminated by Pfizer on March 31, 2010, were subsequently hired by Benchmark on April 1, 2010 and received no severance benefits from the Severance Plan," and that joinder of all members is impracticable. Compl. ¶ 16; Pl.'s Memo. Supp. Class Cert. 4. Defendants argue, in contrast, that joinder is not impracticable: only three plaintiffs formally

initiated a claim for Severance Benefits; there are only three plaintiffs interested in participating in the class; and with only three potential plaintiffs, the plaintiffs have failed to establish the impracticability of joinder. Def.'s Opp. Class Cert. 4.

The numerosity analysis depends in large part on the determination of the number of putative plaintiffs who have viable claims; unnamed plaintiffs whose claims were time-barred prior to the filing of the complaint will not be included in the putative class. *Cf. Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 246-48 (3d Cir. 1975), *cert. denied*, 421 U.S. 1011 (1975)(putative class could not include unnamed plaintiffs time-barred from filing EEOC charges at the time the named plaintiffs filed their charges); *Nat'l Ass'n of Gov't Employees v. City Pub. Sev. Bd. of San Antonio*, 40 F.3d 698, 716 (5th Cir. 1994) (district court properly denied class certification because statute of limitations should be considered when calculating numerosity: "[p]utatitve class members whose grievances are barred by the statute of limitations . . . cannot be counted toward computation of the class"); *Daniels v. Fed. Reserve Bank of Chicago*, 194 F.R.D. 609, 618 (N.D. Ill 2000)(individuals with EEOC time-barred claims may not be included with the proposed class). *Cf. Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002)(district court did not abuse its discretion in denying class certification when a majority of the claims included in a proposed class were time-barred; named plaintiffs' timely claims were atypical).

The claims of the unnamed plaintiffs in the present action are all time-barred. The terms of the plan require employees to request benefits within sixty days of the change in control. If a Benchmark employee believed the transfer of her employment to Benchmark on April 1, 2010 constituted an involuntary termination under the Plan, she had to file a claim for benefits by June 1, 2010. Since the alleged termination, only the three named plaintiffs initiated administrative remedies. The complaint was filed on July 1, 2011, more than one year after the deadline for a

timely claim. Plaintiffs concede that none of the unnamed plaintiffs timely filed for benefits or filed late.

The unnamed class members who failed to initiate administrative claims do not have cognizable claims. Except for the named plaintiffs, the putative class consists entirely of individuals holding unfiled, time-barred claims; the numerosity requirement has not been established because the unnamed putative plaintiffs are now precluded from obtaining judicial relief under the plan. *Cf. Berger v. Edgewater Steel Co.*, 911 F.2d 911, 917 (3d Cir. 1990) (individual plaintiff who failed to initiate a timely request for ERISA benefits was precluded from seeking judicial relief to enforce the terms of the plan). Plaintiffs have failed to establish the Rule 23(a)(1) numerosity requirement is met; joinder of the three colorable benefit claims is not impracticable.

A class action must meet all the mandatory requirements of Rule 23(a). In light of the lack of numerosity, it is unnecessary to decide whether respondents have satisfied the remaining Rule 23(a) requirements of commonality, typicality, and adequacy. *See Wal-Mart Stores,* 131 S.Ct. at 2551 n.5 (Court declined to resolve typicality and adequacy questions because named plaintiffs failed to demonstrate commonality). This court will deny plaintiffs' Motion for Class Certification for lack of numerosity. Plaintiffs may pursue their claims for severance benefits under the Severance Plan in their individual capacities. An appropriate order follows.